IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JERRY L. KORN, | ) | Bankruptcy No. 04-4261-TLM |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| DDR NAMPA, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | **MEMORANDUM ORDER** |
| vs. | ) | |
| | ) | Case No. CV 06-467-S-EJL |
| JERRY L. KORN, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |

In late November of 2004, Jerry L. Korn (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"). The primary asset of the Debtor in that petition was fifteen (15) acres of real property located in Nampa, Idaho (the "Nampa Property"). Prior to the Bankruptcy Case, Mark Clark had been appointed as Custodian of the Nampa Property and was charged with the duty to liquidate the Nampa Property. After extensive negotiations and with the approval of the Bankruptcy Court, the Nampa Property was sold to DDR Nampa LLC ("DDR"). In conjunction with that sale, Debtor was obligated to remove certain animals from the Nampa Property. To facilitate and assist in the removal of the animals, DDR expended significant resources. Following the removal of the

**MEMORANDUM ORDER** - Page 1

animals, DDR filed a request to treat their expenditures as an administrative expense of the Bankruptcy Case.

In the decision this Court is asked to review today, the Bankruptcy Court declined to grant administrative expense status to the claim made by DDR against Debtor's bankruptcy estate. This Court concludes the claims made by DDR cannot be considered administrative expenses of Debtor's bankruptcy estate, and thus, affirms the decision of the Bankruptcy Court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, the Debtor was involved in a lengthy and contentious divorce proceeding with his former spouse, Susan Korn ("Ex-wife"). Following the grant of divorce, the state court appointed Mark Clark as Custodian of the Nampa Property and charged him with the duty of liquidating it. In addition to being the residence of the Debtor, the Nampa Property also housed a wide array of animals including a giraffe, several tigers, a cougar, a bear, a herd of elk, and numerous swans and other exotic birds.

At some point after his appointment, the Custodian became concerned about selling the property with the animals still present and sought the intervention of the state court. At his request, the district court entered an order directing Canyon County to remove the animals from the Nampa Property. The county's preliminary estimates for the cost of animal removal were approximately $75,000. Before the county was able to remove the animals, the present bankruptcy action was filed.

On November 30, 2004, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to § 543(d) of the Bankruptcy Code, the Custodian was permitted to remain in possession of the Nampa Property and continue marketing the same. In the summer of 2005, the efforts of the Custodian resulted in an offer by DDR to purchase the

property free and clear of the animals for the price of $1,700,000.00. In addition to the purchase price, DDR offered an additional $50,000.00 to be placed in trust as part of a post-closing obligation of the Debtor to remove the animals from the Nampa Property no later than October 24, 2005. According to the purchase and sale agreement, the additional $50,000.00 was to be used solely for third party costs actually incurred in removing the animals.

On June 15, 2005, the Bankruptcy Court held a hearing on the proposed sale of the Nampa Property. Neither the Debtor, the Ex-wife, the Custodian, nor any other party in interest objected to the sale of the Nampa Property. Subsequently, the Bankruptcy Court approved the sale and entered an <u>Order Approving and Confirming the Sale of the Nampa Real Estate from the Debtor to DDR Outside the Ordinary Course of Business</u> (the "Sale Order").

The agreement as modified by the Sale Order provided the $50,000.00 in Animal Removal funds would be deposited into a trust account maintained by DDR's local counsel, Michael Spink. Disbursements from the account would be made upon written request to Mr. Spink, together with supporting documentation, for "expenses actually incurred in removing the Animals" from the Nampa Property. Closing on the sale of the Nampa Property occurred on July 15, 2006.

Shortly after the entry of the Sale Order, DDR began to monitor the Debtor's progress in removing the animals. The Debtor advised DDR that the animals were being moved to a site in Payette, Idaho (the "Payette Site") that was at that point undeveloped. Before the animals could be moved, new habitats needed to be constructed on the Payette Site. The Payette Site is, and was at all times relevant to these facts, owned by the Debtor's mother, Lois Korn. Debtor has no interest in the Payette Site.

On August 9, 2005, the Debtor filed a motion for an order allowing release of trust funds and proposed a procedure for future disbursements. On August 18, 2005, the Bankruptcy Court entered an order (the "Funds Order") immediately releasing $13,131.00 from the trust account and allowed Mr. Spink to release additional funds held in trust for expenses actually incurred in the animal relocation.

By September, DDR had taken an active role in facilitating the animal removal. DDR assigned their development director for the Western Region, Steve Faucett, to supervise the project. Mr. Faucett's task was to effect the animal removal on the Nampa Property as quickly as possible. Construction of the new habitats on the Payette Site progressed slowly. When the October 24, 2005, deadline for the animal removal arrived the entire $50,000.00 that had been deposited in trust for animal removal had been spent. However, the new habitats for the animals were not complete and the animals had not been removed from the Nampa Property.

Following the expiration of the deadline, DDR continued its involvement in overseeing the animal removal and the related construction of new habitats on the Payette Site. Proceeding without court approval, on multiple occasions DDR deposited additional funds into the trust account and made other substantial direct payments for materials and labor. By the time the project was complete and the animals were finally relocated to the Payette Site, DDR had expended well in excess of $500,000.00. At no point did DDR declare the Debtor to be in default of his obligations or otherwise seek court intervention to enforce the terms of the agreement. Finally, on April 14, 2006, DDR filed a request with the Bankruptcy Court seeking to treat its expenditures (totaling "no less than $594,787.17") as administrative expenses. The Bankruptcy Court denied the request by order entered October 6, 2006. DDR timely appealed and elected to have the appeal heard by this Court rather than the Bankruptcy Appellate Panel.

## STANDARD OF REVIEW

This Court reviews de novo the Bankruptcy Court's conclusions of law.  In re Hayden, 308 B.R. 428, 431 (9th Cir. 2004), citing In re Jodoin, 209 B.R. 132, 135 (9th Cir. 1997).  This Court reviews the Bankruptcy Court's findings of fact for clear error.  In re American Wagering, Inc., 465 F.3d 1048, 1051 (9th Cir. 2006).

## ANALYSIS

A. *DDR is Not Entitled to an Administrative Expense for Damages Incurred in Connection with the Debtor's Breach of the Agreement.*

When the assets of a bankruptcy estate are distributed to the bankrupt's creditors, claims for administrative expenses are among the very first unsecured claims that are paid.  See United States Trustee v. Endy (In re Endy), 104 F.3d 1154, 1155-56 (9th Cir. 1977); 11 U.S.C. § § 726(a), 507(a)(1), 503(b).  The Bankruptcy Code provides a nonexhaustive list of allowable administrative expenses.  These expenses include, "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]" 11 U.S.C. 503(b)(1)(A).

The party claiming the administrative expense has the burden of proving that the claim is warranted.  In re Coolex, Inc., 96.1 I.B.C.R. 35, 36 (Bankr. D. Idaho 1996).  Administrative expense claims will be allowed if the debt "(1) arose from a transaction with the debtor-in-possession and (2) directly and substantially benefitted the estate."  In re BCE West, L.P., 319 F.3d 1166, 1172 (9th Cir. 2003).

i. *The Expenses Claimed by DDR Arose from a Transaction with the Debtor-In-Possession.*

**MEMORANDUM ORDER** - Page 5

The first part of the test is simple. The Debtor filed for bankruptcy in November of 2004. While the Custodian had been attempting to liquidate the Nampa Property prior to that date, there had been no communication between the Debtor or the Custodian and DDR until after the Debtor filed for bankruptcy. DDR made an offer to purchase the Nampa Property in the summer of 2005 which was ultimately approved by the Bankruptcy Court and finalized in July of 2005. All other expenditures related to the animal removal occurred after the closing on the Nampa Property. Thus, all the transactions at issue here occurred post-petition with a debtor-in-possession. DDR has satisfied the first part of the test.

      ii.    *DDR Failed to Show that Damage Claims Provided a Direct and Substantial Benefit to the Debtor's Bankruptcy Estate.*

DDE must next show that the transaction or debt underlying their administrative expense claim provided a direct and substantial benefit to the Debtor's estate. There can be no doubt that the sale of the Nampa Property to DDR, and the original $50,000.00 placed in trust to effect the animal removal provided a direct and substantial benefit to the Debtor's bankruptcy estate. Indeed, the Bankruptcy Court found the sale to be in the best interests of the Debtor and the estate. However, aside from the court-approved agreement, DDR expended well in excess of $500,000.00 to assist in the removal of animals from the Nampa Property, which it claims provided a benefit to the debtor's estate. However, while the amount expended by DDR was certainly substantial, all amounts in excess of the $50,000.00 contemplated by the original agreement did not provide a direct and substantial benefit to the Debtor's bankruptcy estate, and thus is not entitled to administrative expense priority.

To be granted administrative expense priority, the benefits resulting from expenditures must "inure primarily, if not solely, to the estate as opposed to the benefit of some other entity."

**MEMORANDUM ORDER** - Page 6

In re Coolex, Inc., 96.1 I.B.C.R. at 37. As previously noted, the Payette Site upon which DDR constructed new habitats for the animals is not the property of the bankruptcy estate. The Payette Site is owned by the Debtor's mother, Lois Korn. Neither the Debtor nor the bankruptcy estate has any interest in that property. Any benefit or enhancement in value accruing to the property as a result of the new structures constructed thereon inures not to the bankruptcy estate, but rather to Lois Korn.

Likewise, the benefit derived from expenditures in relocating the animals did not inure to the bankruptcy estate. The animals were owned by For the Birds, Inc. ("FTB"). To be sure, FTB is a closely held corporation of Mr. Korn; however, it is a separate and distinct entity from the Debtor's bankruptcy estate. The Debtor's estate received no benefit from the safe transport of the animals from the Nampa Property to their new home on the Payette Site, but FTB certainly did. Thus, the money DDR expended in relocating the animals did not benefit the Debtor's estate, but rather benefitted FTB, the owners of the animals. Post-petition expenses that benefit a third party are not entitled to administrative expense priority. In re Sierra Pacific Broadcasters, 185 B.R. 575, 579 (9th Cir. BAP 1995). Because the expenditures in excess of the original $50,000.00 deposited in trust for animal removal did not directly and substantially benefit the bankruptcy estate the second part of the test is not met and DDR is not entitled to administrative-expense treatment for them.

    B.    *The Bankruptcy Court Did Not Err in Denying DDR's Request for an Administrative Expense Without Affording it an Opportunity to Present Evidence on the Amount and Reasonableness of Expenditures.*

Bifurcation is commonplace in our judicial system. It is routinely used by the courts in their sound discretion to expeditiously resolve matters and efficiently use judicial resources.

See Zivkovic v. So. Cal. Edison Co., 302 F.3d. 1080, 1088 (9th Cir. 2002) (stating Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues).

In determining whether to allow DDR's request for an administrative expense the Bankruptcy Court set the matter for a bifurcated hearing. The purpose of the first stage was to determine if an administrative expense was proper. If the court found that the request was well founded and thus allowed the administrative expense claim, a second hearing would proceed to determine the amount of such claim. DDR argues that it was denied due process because the Bankruptcy Court ruled on matters[1] that were properly the subject of the second hearing without affording DDR an opportunity to present evidence thereon.

Whether the perceived unreasonableness of DDR's manner and amount of expenditures played a part in the Bankruptcy Court's overall calculus of allowability of the administrative expense claim is immaterial here. This Court has found that DDR failed to satisfy is burden of proof that the expenditures provided a direct and substantial benefit to the estate. Thus the administrative expense claim cannot be allowed regardless of how reasonable or unreasonable the expenditures may have been.

    C.    *The Bankruptcy Court Considered the Correct Standard in Denying DDR's Administrative Expense Claim.*

DDR argues that the standard applied by the Bankruptcy Court in considering the administrative expense claim was incorrect. The Bankruptcy Court indicated that while the

---

[1] The Bankruptcy Court found that it was unreasonable for DDR to spend approximately $600,000.00, particularly in the manner in which it did, to relocate the animals from the Nampa Property. See Memorandum of Decision at 32.

**MEMORANDUM ORDER** - Page 8

court had broad discretion to grant administrative expense claims, the court must construe the terms of § 503(b) narrowly.  See Memorandum of Decision, at 19-20.  This narrow view of the terms in § 503(b) has been consistently used by other courts in the ninth circuit.  See, e.g., In re Palau Corp., 18 F.3d 746, 750 (9th Cir. 1994); In re Dant & Russell, Inc., 853 F.2d 700, 706 (9th Cir. 1988).  Notwithstanding the consistent application of a narrow construction of § 503(b), DDR argues that the estate's solvency in this case warrants a different standard.  However, in support of this proposition, DDR has offered no legal authority.  Neither has this Court's own search revealed any authority suggesting that the Debtor's solvency warrants application of a more lenient standard.  Thus the Bankruptcy Court did not err in denying DDR's request for an administrative expense claim by using a narrow construction of the terms of § 503(b).

> D. *The Bankruptcy Court Did Not Err in Determining that DDR had Waived its Right to the Return of the Initial $50,000.00 Deposit.*

Waiver is a voluntary, intentional relinquishment of a known right.  Seaport Citizens Bank v. Dippel, 735 P.2d 1047, 1050 (Idaho Ct. App. 1987).  Waiver is a question of intent involving a mixed question of law and fact.  Primary Health Network, Inc. v. Dep't of Admin., 52 P.3d 307, 313 (Idaho 2002).  Under the sale agreement in this case, DDR's remedy for Debtor's failure to remove the animals from the Nampa Property by the prescribed time was either to have the court compel Debtor to specifically perform his obligations or return the $50,000.00 deposit.  Here, DDR chose neither remedy.  Instead they expended significant resources, without the court's knowledge or approval, in an effort to effect the removal of the animals.  The Bankruptcy Court found such actions to be a waiver of their right to a return of the original $50,000.00 deposit.  This Court agrees.

**MEMORANDUM  ORDER** - Page  9

DDR argues that the Bankruptcy Court erroneously made determination of fact regarding DDR's intent. The Bankruptcy Court found that "[w]ere [DDR] concerned with return of the Animal Removal Deposit, it would not have voluntarily made cash infusions into the Trust Account after October 24, 2005 for Debtor's use. Nor would it have continued to make direct payments to vendors for labor and materials after that date." Memorandum of Decision at 26. Such a determination of fact will not be overturned absent a showing that it is clearly erroneous. DDR has made no such showing. However, there is evidence on the record to support the Bankruptcy Court's conclusion as to DDR's intent. The testimony of Mr. Faucett indicated that the advances were made voluntarily. Additionally, the testimony of Mr. Hoffman indicates that the $50,000.00 deposit is not even part of DDR's administrative expense claim. The actions of DDR evidence a voluntary relinquishment of their right to the return of the deposit under the contract. The Bankruptcy Court's decision in this regard will not be overturned.

## CONCLUSION

The order of the Bankruptcy Court is AFFIRMED.

DATED: **April 24, 2007**

Honorable Edward J. Lodge
U. S. District Judge